**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Richard E.N.B.,

Petitioner,

v.

David Easterwood, *Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement*; Markwayne Mullin, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; David J. Venturella, *in his official capacity as acting director of U.S. Immigration and Customs Enforcement*; Todd Blanche, *in his official capacity as acting Attorney General of the United States*; James Tadman, *Polk County Sheriff*; and Joey Pederson, *Northwest Regional Corrections Center Jail Administrator*,

Respondents.

Civ. No. 26-2972 (JWB/LIB)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Solomon Daniel Steen, Esq., Contreras Edin Law, P.A., counsel for Petitioner.

David W. Fuller, Esq., United States Attorney's Office, and David R. Hackworthy, Esq., Department of Homeland Security, counsel for federal Respondents.

---

This case presents two related questions: whether federal immigration officers acted within their statutory authority when they arrested Petitioner Richard E.N.B., and, if not, whether 8 U.S.C. § 1225(b)(2) nevertheless supplies a lawful basis for his continued detention. The first question turns on whether the arresting officers complied with 8 U.S.C. § 1357(a)(2). The second requires consideration of the distinct functions

Congress assigned to §§ 1357 and 1225 and the proper scope of habeas relief under § 2241.

Petitioner is a noncitizen who entered the United States without authorization and has been living and working in the community. Years later, he was arrested and detained by Immigration and Customs Enforcement ("ICE") agents. At issue is whether his arrest was lawful.

The record establishes that Petitioner was not arrested under a valid administrative warrant, and that Respondents' warrantless arrest violated § 1357(a)(2). Whether that violation requires release despite Respondents' reliance on § 1225(b)(2) is a separate question. For the reasons explained below, the statutes are best read to preserve their distinct functions: § 1357 governs the authority exercised to arrest Petitioner without a warrant, while § 1225 governs detention following the examination and determination prescribed there. On that reading, Respondents may not continue the present custody initiated through an arrest procedure Congress did not authorize.

## BACKGROUND

Petitioner is a citizen of Ecuador. (Doc. No. 1, Petition ¶¶ 1, 6.) He entered the United States without inspection, admission, or parole in May 2021. (*Id.*) He has since lived in the country and resides in Saint Paul, Minnesota. (Petition ¶ 2; Doc. No. 7-3 at 1.) Petitioner does not have a criminal history. (Petition ¶ 23; Doc. No. 7-3 at 3.)

Petitioner was arrested by ICE on June 12, 2026. (Petition ¶¶ 3, 22; Doc. No. 7-3 at 2.) ICE had been surveilling vehicles working for a roofing company that was suspected of hiring "illegal aliens." (Doc. No. 7-3 at 2.) At approximately 6:50 a.m. on

June 12, 2026, ICE officers identified a white van at a targeted Super 8 Hotel in Bemidji, Minnesota. (*Id.*) ICE officers initiated a traffic stop, the van pulled over without incident, and three ICE vehicles "boxed the van in." (*Id.*)

Respondents allege that three occupants of the van "freely admitted that they were in the United States illegally" and were immediately placed under arrest. (*Id.* at 2–3.) The three van occupants were handcuffed and placed into an ICE service vehicle, while ICE officers secured the van. (*Id.* at 3.)

The three van occupants were then served with a Form I-200 Warrant of Arrest and transported to Grand Forks, North Dakota for immigration processing. (*Id.* at 3; *see also* Doc. No. 7-1.)

At some later point on June 12, 2026, Petitioner was transferred to Northwest Regional Corrections center in Crookston, Minnesota, and was served with a Notice to Appear ("NTA") which commenced removal proceedings, charging him as being present without admission or parole and lacking a valid entry document. (Petition ¶ 4; Doc. No. 7-2 at 4.) Petitioner remains detained in Crookston, Minnesota. (Petition ¶¶ 7, 17.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims that Respondents exceeded or violated their arrest authority under 8 U.S.C. §§ 1226(a) and 1357(a)(2) (Petition ¶¶ 86–95), which violated his Fourth Amendment rights and the Administrative Procedure Act (*id.* ¶¶ 96–106; 77–85). He also claims that his detention violates the Due Process Clause of the Fifth Amendment. (*Id.* ¶¶ 59–70.)

Petitioner challenges only the lawfulness of his present detention. He does not contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II. Analysis

### A. Statutory Arrest Authority

Petitioner claims that Respondents failed to effectuate a lawful arrest under applicable immigration law. Every federal administrative agency, including ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022). That means any failure to abide by the governing statutes and regulations represents taking action without lawful authority to do so. Accordingly, Petitioner's claim asks whether Respondents acted under the authority conferred to them by Congress.

Federal statutes dictate when it is proper to arrest a noncitizen during the removal process. *See Arizona v. United States*, 567 U.S. 387, 407 (2012). The Immigration and

Nationality Act provides two mechanisms for arresting a noncitizen prior to a final removal order. One is to arrest with a warrant under the authority in 8 U.S.C. § 1226(a); the other is to arrest without a warrant under more limited authority in 8 U.S.C. § 1357. *See id.* at 408.

Respondents do not engage with Petitioner's warrant-based arrest argument aside from asserting that "Petitioner was provided an I-200 upon his arrest." (Doc. No. 6 at 12.) Respondents' own records refute this statement. Their record of the encounter clearly lays out the timeline that ICE officers arrested Petitioner, handcuffed him, searched him, placed him into an ICE service vehicle, secured the van, and served him with an I-200 warrant. (Doc. No. 7-3 at 3.)

A valid Form I-200 authorizes the arrest of a noncitizen "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). The timing matters because an NTA initiates the removal proceeding for which the Form I-200 authorizes arrest. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (recognizing that an NTA "serves as the basis for commencing a grave legal proceeding"). Therefore, a lawful § 1226 arrest stems from the authority Congress granted in § 1226 (allowing arrest on a warrant) and Respondents' own rule in § 236.1 (authorizing arrest on an I-200 at or after issuance of a Notice to Appear).

Here, the record does not show that Petitioner's NTA was issued at or before the time that he was arrested on the I-200 warrant. There is no time stamp on the NTA. There is no affidavit from the issuing officer. The document itself is dated June 12, 2026, and

states that Petitioner was "currently residing" at the Northwest Regional Corrections Center in Crookston, Minnesota. (Doc. No. 7-2 at 4.) Petitioner was not present at the Northwest Regional Corrections Center until after ICE arrested him. Accordingly, the record shows by a preponderance that Petitioner was arrested before issuance of the NTA—and therefore before a valid I-200 could authorize the arrest—in violation of the applicable regulation.

Respondents next argue that "[a]ssuming the warrant is invalid, Petitioner's arrest must be judged by the standards of 8 U.S.C. § 1357 and 8 C.F.R. 287.3." (Doc. No. 6 at 12.) Under those standards, Respondents fare no better. A warrantless arrest may occur under § 1357 only when an officer has reason to believe that a noncitizen is present in violation of immigration law and likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2).

The phrase "reason to believe" has been interpreted to mean constitutionally required probable cause. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). And "likely to escape" means likely to disappear before officers can obtain a warrant or likely to evade detention altogether, not just whether the noncitizen would remain at the scene of the encounter, as Respondents contend. *See Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (stating the phrase means likely to "disappear before a warrant could be obtained"); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016) (construing the phrase as meaning "likely to evade detention by immigration officers"); *see also A.P.P. v. Blanche*, Civ. No. 26-3125 (LMP/LIB), 2026 WL 2017765, at *3 (D. Minn. July 13, 2026) (collecting cases that construe the meaning of "likely to

escape”).

The question under “likely to escape” is whether immigration officers would have trouble finding the noncitizen again once they obtain a warrant. *See United States v. Bautisa-Ramos*, No. 18-cr-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct 15, 2018), *R&R adopted*, 2018 WL 5723948 (N.D. Iowa Nov. 1, 2018). The analysis therefore considers whether the noncitizen could be found later at another clearly identifiable location, like their home or place of employment. *See, e.g.*, *Escobar Molina v. U.S. Dep't of Homeland Sec.*, Civ. No. 25-3417 (BAH), 2026 WL 1256234, at *11 (D.D.C. May 7, 2026). ICE itself has given the “likely to escape” phrase this meaning. *See Hussen v. Noem*, No. 26-cv-324 (ECT/ECW), Doc. No. 85-1 (D. Minn. Filed Jan. 30, 2026) (attaching a January 2026 memorandum from former ICE Acting Director Todd Lyons stating that “likely to escape” means likely “to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained”).

Removability alone does not make a noncitizen likely to escape. *See Moreno*, 213 F. Supp. 3d at 1007 (recognizing that equating potential removability with escape risk renders § 1357(a)(2) meaningless); *see also Orellana v. Nobles Cnty.*, 230 F. Supp. 3d 934, 945–46 (D. Minn. 2017) (concluding that the reason to believe a noncitizen was subject to removal did not show likelihood of escape). The inquiry implicates various considerations. Prior enforcement encounters, conflicting documents, and previous removals from the country weigh in favor, while lengthy residence in the country and strong community ties weigh against a person being likely to escape. *See Escobar Molina*

*v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30–31 (D.D.C. 2025) (collecting cases to discuss factors that weigh for and against likelihood of escape).

Respondents argue that the first prong of § 1357 (unlawful presence) is satisfied because they had reasonable suspicion to interrogate Petitioner who then told arresting officers that he was unlawfully present in the country. (Doc. No. 6 at 13.) Upon careful review of the record, Respondents' argument is persuasive.

With respect to escape risk, Respondents contend there was probable cause to believe Petitioner was likely to escape before a warrant could be obtained because "Petitioner was seemingly present in the U.S. and evading ICE officers for over five years." (*Id*. at 13.) But the record shows that rather than "evading ICE," Petitioner was gainfully employed, had been living in the community for over five years, and freely admitted to his arresting officers that he was present in the country unlawfully. Being unlawfully present in the country for five years is not the same thing as "evading ICE."

Respondents further argue that "it was not reasonable to believe that Petitioner would sit idly with immediate access to a vehicle while officers obtained a warrant." (*Id.*) The argument is not persuasive. The I-213 shows that Petitioner was a passenger in a van that was "boxed in" by three ICE vehicles. (Doc. No. 7-3 at 2.) Moreover, Petitioner was handcuffed and placed into an ICE service vehicle. (*Id*.) In other words, Petitioner had no option other than to "sit idly." Respondents' argument also incorrectly narrows the scope of the inquiry. What matters is whether Petitioner could be located at the scene of the encounter or at another clearly identifiable location once an administrative warrant was obtained.

Other facts weighing against likelihood of escape are that Petitioner had community ties through his regular employment. And Respondents, who had been surveilling Petitioner's employer, could have ascertained how to locate Petitioner after the encounter, whether at home, the Super 8 motel, or at work. Petitioner had no criminal history, no prior evasion or removal history, and fully cooperated with ICE officers. Under the circumstances, it was not objectively reasonable to believe that Petitioner was likely to escape.

Finally, Respondents point to their compliance with 8 C.F.R. § 287.3, which generally provides for a post-arrest examination, a determination about removal proceedings, notification of the reasons for detention, and a custody determination within 48 hours of a warrantless arrest. But that regulation does not provide that complying with any of its provisions cures an otherwise invalid warrantless arrest. Compliance with those post-arrest procedures does not supply the statutory authority that § 1357(a)(2) required at the time of the warrantless arrest.

On this record, Respondents lacked probable cause to conclude that Petitioner was likely to escape when they arrested him without a warrant. Accordingly, Petitioner's warrantless arrest violated 8 U.S.C. § 1357.

**B. Remedy**

The remaining question is the consequence of the unlawful arrest. Respondents contend that, whatever defect attended the arrest, Petitioner is now properly subject to mandatory detention under § 1225(b)(2)(A). But as explained below, § 1225 supplies no arrest authority and cannot sustain the same uninterrupted custody that began through an

arrest unauthorized by § 1357.

**1. Release preserves the statutory text and structure**

Under *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), a noncitizen in Petitioner's circumstances falls within § 1225(b)(2)(A) and, after the determination prescribed there, is subject to mandatory detention during removal proceedings. *Avila* did not decide the source or limits of the Government's authority to make a warrantless interior arrest. Thus, accepting that § 1225(b)(2)(A) applies to Petitioner does not answer whether Respondents may continue custody obtained through an arrest that violated § 1357(a)(2).

The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists. *See, e.g.*, *Singh v. Sommer*, No. 7:26-cv-5013, 2026 WL 2042296, at *2–3 (D. Neb. July 15, 2026); *Cabrera v. Hidalgo*, No. 1:26-cv-1101 (LMB/LRV), 2026 WL 2002085, at *3 (E.D. Va. June 18, 2026); *A.P.A. v. Arteta*, No. 26-CV-3334 (AS), 2026 WL 1587452, at *3–4 (S.D.N.Y. June 3, 2026). Others have ordered release after finding that the Government lacked statutory authority for the arrest. *See, e.g.*, *Juan J.M.E. v. Easterwood*, Civ. No. 26-2270 (KMM/EMB), 2026 WL 1746672, at *2–3 (D. Minn. June 8, 2026), *R&R adopted*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Alberto Perdomo Rivera v. Mullin*, No. 5:26-cv-04197-KES, 2026 WL 2276935, at *3 & n.1 (C.D. Cal. Aug. 6, 2026).

Rules of statutory construction apply. The statutory text itself marks the analytical starting point. Related statutory provisions should be read so each retains operative effect. *See Corley v. United States*, 556 U.S. 303, 314 (2009); *Morton v. Mancari*, 417 U.S. 535,

551 (1974). Where a specific provision addresses the particular governmental authority at issue, it ordinarily governs over a more general provision that might otherwise be read to cover the same subject. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (quoting *Morton*, 417 U.S. at 550–51).

Applying those principles to §§ 1357 and 1225 serves to harmonize their distinct but complementary purposes. Section 1357(a)(2) specifically governs the authority exercised here—the power to arrest a noncitizen without a warrant—and it conditions exercise of that authority on finding reason to believe both that the person is unlawfully present and that the person is likely to escape before a warrant can be obtained. Section 1225(b)(2)(A), by contrast, addresses what follows after inspection of an applicant for admission: if an examining immigration officer determines that an applicant is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for a removal proceeding under § 1229a. That provision says nothing about warrantless arrest authority.

Reading § 1225 to sustain Petitioner's current detention despite an unauthorized arrest under § 1357 would substantially diminish the limits Congress placed on warrantless arrests. Section 1357 permits such an arrest only when its specified conditions are met. Yet under Respondents' reading, ICE could arrest a noncitizen and even wholly ignore § 1357's conditions, conduct the § 1225 inspection made possible by that arrest, and then continue the same custody because § 1225 requires detention. But ICE identifies no statutory authority permitting it to bypass § 1357's conditions when making a warrantless arrest.

The two provisions can instead be given full effect according to the different subjects they address. Section 1357 governs whether ICE may take a noncitizen into custody in the interior without a warrant. Section 1225(b)(2)(A) addresses what follows after examination: if an examining immigration officer determines that an applicant for admission is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for removal proceedings. *Avila* requires enforcement of that detention command, but it does not hold that § 1225 supplies authority for the warrantless arrest that precedes it. Giving effect to § 1357's specific limits on that arrest therefore does not diminish § 1225 or conflict with *Avila*; it gives effect to both statutes as written.

That reading also fits the statutory sequence. Section 1357(a)(2) directs that a person arrested without a warrant be taken without unnecessary delay before an officer authorized to examine the person's right to enter or remain in the United States. *See* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(a). An examination following arrest may supply the determination relevant to § 1225(b)(2)(A), but the later examination does not supply the distinct authority needed for the earlier warrantless seizure.

The question, then, is not whether § 1225 "cures" the defective arrest. It does not make the arrest lawful. The question is whether § 1225 independently authorizes continuation of the same custody even though the Government lacked statutory authority to initiate that custody through the warrantless arrest it chose to make. The statutory text provides no basis for treating the post-arrest detention directive as an independent authorization for custody obtained through an arrest Congress expressly limited in § 1357.

This conclusion does not treat Petitioner's current confinement as "poisonous fruit" or hold that every earlier statutory violation necessarily invalidates later custody. It rests on the narrower relationship between these provisions. Respondents used the warrantless-arrest authority supplied by § 1357 to take Petitioner into custody, and § 1225 contains no independent grant of arrest authority. The later § 1225 determination may remain valid for the purposes that provision serves, but it does not retrospectively supply the authority that was absent when this custody began.

Accordingly, § 1225(b)(2)(A) does not independently sustain Petitioner's present custody that began with an arrest that violated § 1357(a)(2).

**2. *Bilokumsky* and later proceedings**

*United States ex rel. Bilokumsky v. Tod* states that if "sufficient ground" for a prisoner's detention is shown, the prisoner "is not to be discharged for defects in the original arrest or commitment." 263 U.S. 149, 158 (1923) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

That principle cannot be given short shrift because of the case's age. The Supreme Court later cited the same page of *Bilokumsky* in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984), when explaining that an unlawful arrest does not itself invalidate a subsequent deportation proceeding.[1]

---

[1] Respondents also point out that the Supreme Court has "never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." *Gerstein v. Pugh*, 420 U.S. 103, 113 (1975). *Gerstein* does not resolve the issue here. Respondents had probable cause to believe Petitioner was unlawfully present, but § 1357(a)(2) separately required reason to believe he was likely to escape before a warrant could be obtained. The record does not establish that additional statutory predicate.

The *Bilokumsky* principle, however, does not resolve this case. *Bilokumsky* establishes that an unlawful original arrest does not invariably require habeas release when sufficient lawful grounds for detention subsequently exist. The unresolved question here is whether § 1225(b)(2)(A) supplies that "sufficient ground" where Petitioner remains in the same custody acquired through an interior warrantless arrest for which § 1357 specifically supplied—and limited—the Government's authority.

The statutory scheme here answers that narrower question. As explained above, the examination contemplated by § 1225 may determine whether detention is required, but it does not provide a separate basis for maintaining the same uninterrupted custody when the statutory authority required to initiate that custody was absent. Giving § 1225 that effect reads § 1357's arrest requirements out of the statutory scheme. That is why § 1225 is not the "sufficient ground" contemplated by *Bilokumsky* for Petitioner's custody.

Nor does release invalidate or alter Petitioner's removal proceeding. *Lopez-Mendoza* teaches that the legality of an arrest does not itself determine removability and that an unlawful arrest does not necessarily invalidate the ensuing immigration proceeding. 468 U.S. at 1039–40. Petitioner does not ask to terminate the removal case, suppress evidence in it, or otherwise alter the merits of the removability inquiry. That proceeding may continue notwithstanding the relief ordered here.

The distinction is therefore between the Government's authority to pursue removal and its authority to maintain Petitioner's present physical custody. The former is unaffected. The latter depends on the statutes governing arrest and detention, read

together according to their distinct functions. Because § 1357 did not authorize the warrantless arrest through which Respondents acquired custody, and § 1225 does not independently authorize continuation of that custody, Petitioner is entitled to release.

### 3. Conclusion

The appropriate habeas remedy is release from the present custody. *See* 28 U.S.C. §§ 2241(c)(3), 2243; *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That relief is narrow. It terminates the detention initiated through an unauthorized arrest under the provision Congress specifically enacted to govern the seizure at issue. It does not invalidate § 1225, terminate the removal proceedings, or preclude Respondents from later arresting or detaining Petitioner pursuant to lawful authority and in compliance with applicable statutory and regulatory requirements.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and Respondents are ordered to immediately release Petitioner. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Richard E.N.B.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents must immediately release Petitioner from custody.

3. When Petitioner is released:

   a. **Release and Return of Property.** In the event that Respondents release

Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

4. **Notice.** Within **48 hours** of entry of this order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

5. Petitioner's other claims are not reached.

6. Petitioner's Motion to Expedite (Doc. No. 12) is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: October 9, 2026
Time: 1:30 p.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge